STATE COMPLIANCE WITH FEDERAL RELOCATION ACT Urban renewal authorities, public school districts, counties and municipalities are able to comply with federal law in regard to relocation assistance and real property acquisition policies. The Attorney General has considered your letter wherein you ask the following question: "Under the various provisions of Oklahoma law are Oklahoma Urban Renewal Authorities, Public School Districts, Counties, and Municipalities able to comply with the provisions of Public Law 91-646, 84 Stat. 1894, entitled, 'Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970,' which was enacted by the United States Congress on January 2, 1971." A general reading of the federal statute would seem to indicate that it applies only to federal agencies. However, upon a close examination of two crucial sections of the federal act (210 and 305 which are hereinafter discussed) certain obligations are imposed upon a state as a condition precedent to that state's receipt of federal assistance for public projects involving acquisition of land and the relocation of persons thereon. In short, the states are required to adopt legislation in compliance with the federal act by July 1, 1972, or face the loss of federal assistance on projects involving land acquisition and the displacement of persons. To comply with Title II of the federal act the Oklahoma Legislature enacted Senate Bill 298 which is now codified as Title 63 O.S. 1085 [63-1085] — 63 O.S. 1099 [63-1099] (1971), and was effective July 1, 1971. To comply with Title III of the federal act, the Oklahoma Legislature enacted House Bill 1479, which is codified as Title 27 O.S. 9 [27-9] — 27 O.S. 15 [27-15] (1971) and which is to be effective July 1, 1972. The federal and state acts are largely similar in provisions. An initial example would be the respective declaration of purpose of the federal and state act provisions dealing with relocation assistance. Section 201 of Title II states the declaration of policy for the Federal Relocation Assistance Act: "The purpose of this title is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole." Title 63 O.S. 1085 [63-1085] (1971), provides: "The purpose of this act is to establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by any public project receiving Federal financial assistance in any part thereof. Whenever the words 'federally assisted' appear in this act, same shall be construed as pertaining to any public program or project receiving Federal financial assistance in any part thereof. Such policy shall be uniform as to (1) relocation payments, (2) advisory assistance, (3) assurance of availability of standard housing." Thus it can be seen that the declaration of purpose for both the Federal and State acts are very similar. The states are required to comply with the provisions of 210 and 305 of the federal act, in order to qualify for federal assistance. Title II, 210 of the Federal Act provides: "Notwithstanding any other law, the head of a Federal agency shall not approve any grant to, or contract or agreement with, a State agency, under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the displacement of any person on or after the effective date of this title, unless he receives satisfactory assurances from such State agency that "(1) Fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under Sections 202, 209, and 204 of this title "(2) Relocation assistance programs offering the services described in Section 205 shall be provided to such displaced persons; "(3) Within a reasonable period of time prior to displacement, decent, safe, and sanitary replacement dwellings will be available to displaced persons in accordance with Section 205(c)." (Emphasis added) Title II, 305 of the Federal Act provides: "Sec. 305. Notwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, a State agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after the effective date of this title, unless he received satisfactory assurances from such State agency that; "(1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 301 and the provisions of section 202, and "(2) property owners will be paid or reimbursed for necessary expenses as specified in sections 301 and 304." (Emphasis added) Thus, it can be seen that in order to comply with Section 210 of the Federal Act, and thereby be eligible for federal assistance, the various states are required to adopt statutes in compliance with Sections 202, 203, 204, Section 205 and Section 205(c) (3) of the Federal Act. To comply with Section 305 of the Federal Act, the states are required to adopt legislation in compliance with Sections 301, 302, 303 and 304 of the Federal Act. A comparative reading of Title II, Section 202 of the Federal Act and 63 O.S. 1087 [63-1087] (1971), reveals that they are virtually identical in provisions, and that the state law fully complies with the federal law. The same is true for Title II, Section 203 and 63 O.S. 1088 [63-1088] (1971). In addition, the provisions of Title II, Section 204 and 63 O.S. 1089 [63-1089] (1971), are identical. Hence, the preceding sections of the state law are clearly in full compliance with the Federal Act. The provisions of Title II, Section 205 of the Federal Act and 63 O.S. 1090 [63-1090] (1971), are not identical but there is substantial compliance with the federal law. The Federal Act provides: "(a) Whenever the acquisition of real property for a program or project undertaken by a Federal agency in any State will result in the displacement of any person on or after the effective date of this section, the head of such agency shall provide a relocation assistance advisory program for displaced persons which shall offer the services described in subsection (c) of this section. If such agency head determines that any person occupying property immediately adjacent to the real property acquired is caused substantial economic injury because of the acquisition, he may offer such person relocation advisory services under such program. "(b) Federal agencies administering programs which may be of assistance to displaced persons covered by this Act shall cooperate to the maximum extent feasible with the Federal or State Agency causing the displacement to assure that such displaced persons receive the maximum assistance available to them. "(c) Each relocation assistance advisory program required by subsection (a) of this section shall include such measures, facilities, or services as may be necessary or appropriate in order to — "(1) determine the need, if any, of displaced persons, for relocation assistance; "(2) provide current and continuing information on the availability, prices, and rentals, of comparable decent, safe, and sanitary sales and rental housing, and of comparable commercial properties and locations for displaced businesses; "(3) assure that, within a reasonable period of time, prior to displacement there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families and individuals displaced, decent, safe, and sanitary dwellings, as defined by such Federal agency head, equal in number to the number of and available to such displaced persons who require such dwellings and reasonably accessible to their places of employment, except that the head of that Federal agency may prescribe by regulation situations when such assurances may be waived; "(4) Assist a displaced person displaced from his business or farm operation in obtaining and becoming established in a suitable replacement location; "(5) supply information concerning Federal and State housing programs, disaster loan programs, and other Federal or State programs offering assistance to displaced persons; and "(6) provide other advisory services to displaced persons in order to minimize hardships to such persons in adjusting to relocation. "(d) The heads of Federal agencies shall coordinate relocation activities with project work, and other planned or proposed governmental actions in the community or nearby areas which may affect the carrying out of relocation assistance programs. Under Section 210(2) of the Federal Act, states are required to comply with Section 205 generally. Under Section 210(3) of the Federal Act, the states are required to comply specifically with Section 205(c) (3). The corresponding section of the state act is Title 63 O.S. 1971 1090 [63-1090], it provides: "A. Whenever the acquisition of real property for any federally assisted program or project undertaken by a state agency will result in the displacement of any person on or after the effective date of this act, such agency shall provide a relocation assistance advisory program for displaced persons which shall offer the services prescribed herein. If the state agency determines that any person occupying property immediately adjacent to the real property acquired is caused substantial economic injury because of the acquisition, it may offer such person relocation advisory services under such program. "B. Each relocation assistance program required by subsection A shall include such measures, facilities or services as may be necessary or appropriate in order: "1. To determine the needs of displaced persons, business concerns and non-profit organizations for relocation assistance; "2. To assist owners of displaced businesses and farm operations in obtaining and becoming established in suitable business locations or replacement farms; "3. To supply information concerning programs of the federal, state and local governments offering assistance to displaced persons and business concerns; "4. To assist in minimizing hardships to displaced persons in adjusting to relocation; and "5. To secure, to the greatest extent practicable, the coordination of relocation activities with other project activities and other planned or proposed governmental actions in the community or nearby areas which may effect the carrying out of the relocation program." Title 63 O.S. 1090 [63-1090], does not contain language similar to Section 205(b), Section 205(c) (2) or Section 205(c) (3). However, 63 O.S. 1090B [63-1090B] (2) (3) (4), provides, generally, that the state agency shall render advisory services: to assist owners of businesses and farms in relocating, to supply information on all relocation assistance programs, and to assist in minimizing any hardships to displaced person. Specifically, 63 O.S. 1091 [63-1091] (1971), was enacted to comply with Section 205(c) (3). It provides: "Whenever the acquisition of real property for any federally assisted program or project undertaken by a state agency will result in the displacement of any person on or after the effective date of this act, such agency shall assure that, within a reasonable period of time, prior to displacement there will be available, in areas not generally-less desirable in regard to public utilities and public and commercial facilities, at rents or prices within the financial means of the families and individuals displaced, decent, safe and sanitary dwellings equal in number to the number of and available to such displaced persons who require such dwellings and reasonably accessible to their places of employment; except that regulations issued pursuant to Section 8 of this act may prescribe situations when these assurances may be waived." The following Oklahoma Statutes are in full compliance with their respective, corresponding sections of the Federal Act. 27 O.S. 13 [27-13] (1971) . . . . Title III, Section 301 27 O.S. 14 [27-14] (1971) . . . . Title III, Section 302 27 O.S. 10 [27-10] (1971) . . . . Title III, Section 303 27 O.S. 11 [27-11] (1971). . . . Title III, Section 304 It should be noted that Title 63 O.S. 1085-1099 [63-1085-1099], was effective July 1, 1971. Title 27 O.S. 9-15 [27-9-15], dealing with real property acquisition policies will not become effective until July 1, 1972. Therefore, the state law will not wholly comply with the federal law until the effective date of the provisions in Title 27. However, the federal act in Title II, Section 221(b), provides: "Until July 1, 1972, sections 210 and 305 shall be applicable to a state only to the extent that such state is able under its law to comply with such sections . . ." Since the effective date of Title 27 O.S. 1971, 9-15 [27-9-15], is the same as the deadline in the Federal Act, then Oklahoma will at all times be in compliance with the federal statute. Prior to the deadline of July 1, 1972, under the provisions of Section 221(b), supra, the existing law 490 of Oklahoma will be sufficient to allow the state to conform to the federal act. A part of your question was whether urban renewal authorities, public school districts, counties, and municipalities are able to comply with the federal act. As has been previously discussed, the state law is in substantial compliance with the federal law, therefore in complying with the state law, a state agency will comply with the federal law. Title 63 O.S. 1086 [63-1086](1) (1971), defines a state agency as: ". . . any department, agency or instrumentality of the state or of a political subdivision of the state; or any department, agency or instrumentality of two or more subdivisions of the state." (Emphasis added) It is obvious that urban renewal authorities, public school districts, counties and municipalities all come within the definition of a state agency, hence, all are subject to 63 O.S. 1085-1099 [63-1085-1099]. Title 27 O.S. 1971 9 [27-9], provides that the provisions of 27 O.S. 9-15 [27-9-15], shall be applicable: ". . . to the acquisition of real property under the laws of this state for public use in any project or program in which federal, state, or local funds are used." (Emphasis added) Thus, it is clear that urban renewal authorities, public school districts, counties and municipalities are also subject to the provisions of 27 O.S. 1971, 9-15 [27-9-15]. It is the opinion of the Attorney General that the services required by 63 O.S. 1090 [63-1090](b) are in substantial compliance with those required in Section 250(c)(d). It is the opinion of the Attorney General that the state law fully complies with the provisions of the federal law. The substantive provisions of each are identical. Indeed the wording is virtually identical in most instances. It is the opinion of the Attorney General that your question be answered in the affirmative. Urban renewal authorities, public school districts, counties, and municipalities are able to comply with the provisions of P. L. 91-646, under the various provisions of Oklahoma law. (Steve E. Moore)